UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
In re:

                                                                Chapter 7

CESAR CEDILLO,                                                   Case No. 13-42445-ess


                        Debtor.
---------------------------------------------------------------------x
WEB HOLDINGS, LLC,


                        Plaintiff,                              Adv. Pro. No. 15-01048-ess


        -against-


CESAR CEDILLO,


                        Defendant.
---------------------------------------------------------------------x

**MEMORANDUM DECISION ON WEB HOLDINGS, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**


*Appearances*:

Eric C. Zabicki, Esq.                          Norma E. Ortiz, Esq.
Pick & Zabicki LLP                             Ortiz & Ortiz LLP
369 Lexington Avenue                           32-72 Steinway Street
12th  Floor                                    Suite 402
New York, New York 10117                       Astoria, New York 11103

*Attorneys for Web Holdings, LLC*              *Attorneys for Cesar Cedillo*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion of Web Holdings, LLC ("Web Holdings") for partial summary judgment on two claims asserted in the Complaint dated April 13, 2015 (the "Summary Judgment Motion"), on grounds that there is no genuine dispute as to a material fact as to each element of these claims and that as a result, Web Holdings is entitled to the entry of judgment as a matter of law.

Web Holdings moves for summary judgment on its claim against the debtor, Cesar Cedillo, arising under Bankruptcy Code Section 727(a)(2), to deny Mr. Cedillo a discharge in his Chapter 7 bankruptcy case, on grounds that Mr. Cedillo transferred all of his right, title, and interest in assets of a hardware store owned by him, within one year of the petition date, and with the intent to hinder, delay, or defraud creditors of his estate, including Web Holdings. And Web Holdings moves for summary judgment on its claim against Mr. Cedillo arising under Bankruptcy Code 727(a)(4), to deny Mr. Cedillo a discharge here, on grounds that Mr. Cedillo, knowingly and fraudulently, in connection with his bankruptcy case, made false oaths and accounts.

Mr. Cedillo opposes Web Holdings' Summary Judgment Motion on grounds, among others, that he has been forthcoming with respect to his financial condition in connection with this bankruptcy case, and that any errors and omissions in his Schedules and Statements were inadvertent and unintentional and do not provide a basis for the harsh remedy of denial of his bankruptcy discharge. And at a minimum, Mr. Cedillo argues, Web Holdings has not shown that there is no genuine dispute as to a material fact as to whether he acted with intent to defraud his creditors, or that he knowingly and fraudulently made a false statement in this bankruptcy case.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b), and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c) because the parties have stated their consent to this Court entering a final judgment.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding.").

## Background

*Mr. Cedillo's Chapter 7 Bankruptcy Case*

*The Petition*

On April 24, 2013 (the "Petition Date"), Cesar Cedillo filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code.  That same day, Alan Nisselson was appointed as the Chapter 7 Trustee.

*The Schedules and Statements*

On May 8, 2013, Mr. Cedillo, under the penalty of perjury, filed Schedules and Statements in connection with his bankruptcy case.[1]

---

[1] *See* Case No. 13-42445, ECF No. 12.  Unless stated otherwise, all references to documents correspond to Adv. Pro. No. 15-01048.

Mr. Cedillo does not list any real property on his Schedule A – Real Property.  He lists personal property totaling $13,853 on his Schedule B – Personal Property.  Specifically, in response to Question 13, Mr. Cedillo lists a five percent ownership interest in "Katy & Tania" valued at $1.00, and in response to Question 18, he lists a 2012 tax refund valued at $4,000.  In response to Question 21, "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Mr. Cedillo lists two items of personal property.  These are an action by him against Web Holdings pending in the New York Supreme Court, Kings County, valued at $1.00, and a note from NY Electric Supplies LLC ("NY Electric") dated October 1, 2012, for $50,000, for the sale of inventory and fixtures from Kevin & Richard Hardware Corp. ("K&R Hardware"), also valued at $1.00.  Case No. 13-42455, Schedule B, ECF No. 12, at 3.  And Mr. Cedillo lists his interest in "machinery, fixtures, equipment, and supplies used in business" in the aggregate amount of $7,500.  *Id.*

On August 6, 2013, Mr. Cedillo filed an amended Schedule B.  His amended Schedule B omits descriptions of his personal property that were included in his initial Schedule B filed on May 8, 2013.

On his Schedule E – Creditors Holding Unsecured Priority Claims, Mr. Cedillo lists one creditor, the New York State Department of Taxation & Finance ("New York State"), as holding an unsecured priority claim in the aggregate amount of $150,000.  On his Schedule F, he lists several creditors holding unsecured, nonpriority claims, including a judgment in favor of Carver Federal Savings Bank ("Carver") in the amount of $166,447.29, and an unsecured, nonpriority claim held by Web Holdings in an unknown amount.

Mr. Cedillo does not list any co-debtors on his Schedule H – Codebtors.  On his Schedule I – Current Income of Individual Debtor, he states that he was employed as a plumber for one

week, but does not provide his exact dates of employment.  He also states that he received other monthly income in the amount of $600, and lists his combined average monthly income as $2,600.  He does not identify any contributors.  Mr. Cedillo lists expenses totaling $2,600 on his Schedule J – Current Expenditures of Individual Debtor, and these expenses include food, clothing, taxes, "payment to roommate for Rent, Utilities, Phone and Food," "Personal Care and Grooming," and "Vehicle Fuel and Maintenance."  Case No. 13-42455, Schedule J at 1-2.

Mr. Cedillo also filed a Statement of Financial Affairs.  In response to Question 18, he identifies four businesses in which he had an interest within six years preceding the Petition Date.  These are Kathy & Tania Inc., 654 Myrtle Ave. Corp., 1111 Willoughby Ave. Realty Corp., and Troutman Realty Corp.  In response to Question 10, Mr. Cedillo lists the transfer of a hardware store to NY Electric.  In response to Question 19, Mr. Cedillo identifies Humbert Suremott as having kept his books of accounts and records within the two years preceding his filing for bankruptcy.

On August 6, 2013, Mr. Cedillo filed an amended Statement of Financial Affairs.  He amended his response to Question 18, concerning businesses in which he had an interest within six years preceding the Petition Date, to include an interest in Kevin & Richard Plumbing & Heating Serv., and also updated the status or disposition of the suits and administrative proceedings in which he is or was a party within one year preceding the Petition Date to include Carver's state court action against him.  Mr. Cedillo also updated his description of *Web Holdings, LLC v. Steal Corp., et al.*, Index No. 41979-2007, from "unknown," to "judgment." Case No. 13-42445, Stmt. of Fin. Affairs at 2; Am. Stmt. of Fin. Affairs at 2.

*The Proofs of Claim*

The deadline for filing proofs of claim in Mr. Cedillo's bankruptcy case was June 20, 2014, and three creditors filed timely claims. On July 19, 2013, Carver filed a timely proof of claim in the unsecured amount of $408,030.66. Just over one month later, on August 21, 2013, Web Holdings, the plaintiff in this action, filed a timely proof of claim in the secured amount of $506,665.21. Web Holdings alleges that its proof of claim arises from an October 25, 2010 judgment entered by the New York Supreme Court, Kings County, in the amount of $413,812.49, in an action entitled *Web Holdings, LLC v. Steal Corp.*, Index No. 41979/07 (the "State Court Action"). Compl., ECF No. 1, ¶ 6. New York State's proof of claim followed, and on April 17, 2014, it filed a timely proof of claim in the amount of $63,762.32, $51,898.70 of which is a priority claim.

The last day to object to Mr. Cedillo's discharge was August 5, 2013. From time to time, Mr. Cedillo and Web Holdings, among others, agreed by stipulation to extend the time to object to Mr. Cedillo's discharge, and on March 11, 2015, the Court entered a Stipulation and Order, extending the time of Web Holdings, among others, to object to Mr. Cedillo's discharge until April 17, 2015.

*The Rule 2004 Examination and Section 341 Meeting of Creditors*

On November 14, 2013, the Court entered an Order pursuant to Bankruptcy Rule 2004, directing Mr. Cedillo to produce documents and appear for an examination pertaining to his bankruptcy case. Web Holdings alleges that pursuant to that Order, on September 10, 2014, counsel for Web Holdings and counsel for Carver examined Mr. Cedillo.[2] And as described

---

[2] Carver is also the plaintiff in an action entitled *Carver Federal Savings Bank. v. Cesar Cedillo*, Adv. Proc. No. 15-01001, and on September 11, 2017, this Court entered a memorandum decision on Carver's Motion for Partial Summary Judgment in that case.

below, Web Holdings alleges that Mr. Cedillo's Rule 2004 Examination and Section 341

meeting of creditors (the "Section 341 Meeting") brought to light several inconsistencies in his

bankruptcy filings.

*This Adversary Proceeding*

On April 13, 2015, Web Holdings commenced this adversary proceeding against Mr.

Cedillo by filing a complaint. Web Holdings alleges that Mr. Cedillo failed to make several

required disclosures on his Schedules and Statements. Web Holdings also alleges that Mr.

Cedillo did not disclose that he was an officer, director, or shareholder of K&R Hardware within

the six years preceding this bankruptcy case. Web Holdings further alleges that Mr. Cedillo did

not disclose his legal and equitable ownership interest in a plumbing store as an asset of his

bankruptcy estate. Additionally, Web Holdings alleges that Mr. Cedillo did not disclose a

security interest in assets of a hardware store that K&R Hardware operated, that was granted to

him by NY Electric when it acquired those assets from him. And Web Holdings alleges that Mr.

Cedillo did not disclose NY Electric's assumption of two debts, for which he was personally

liable. Finally, Web Holdings alleges that Mr. Cedillo did not identify income that he received

separate from his full-time employment income.

Web Holdings also alleges that Mr. Cedillo transferred all of his right, title, and interest

in assets of the hardware store (the "Hardware Store Assets") that K&R Hardware operated (the

"Hardware Store") to NY Electric on October 1, 2012, within one year of the Petition Date of

April 24, 2013, and that he did so with the intent to hinder, delay, or defraud creditors of his

estate, including Web Holdings.

*The Parties*

Web Holdings, the plaintiff in this adversary proceeding, is a New York limited liability company and the sub-lessor of commercial real property located at 285-289 Kent Avenue in Brooklyn. Web Holdings began to work with Mr. Cedillo in 2003, and entered into a sublease with Mr. Cedillo for the Kent Avenue property in 2006, in connection with Mr. Cedillo's plans to develop and open a nightclub at that location.

Ultimately, those plans were not successful. As Mr. Cedillo states, "[a]fter years of trying unsuccessfully to obtain a liquor license and final certificate of occupancy, [he] discovered that the Nightclub's location was not zoned for the use as a nightclub," and as a result, the nightclub was unable to open. Opp., ECF No. 21, Ex. 1 (Declaration of Cesar Cedillo) ("Cedillo Decl.") ¶¶ 23-24. Mr. Cedillo states that he "was incapable of paying the rent pursuant to the Nightclub Lease," and in 2007, Web Holdings evicted Mr. Cedillo from the premises. Cedillo Decl.¶ 24.

Following the eviction, Web Holdings commenced the State Court Action against Mr. Cedillo, and on October 25, 2010, a default judgment was entered against him for unpaid rent in the amount of $413,812.49. Web Holdings has filed a proof of claim in that amount in Mr. Cedillo's bankruptcy case.

Mr. Cedillo, the defendant in this adversary proceeding, is the debtor in a Chapter 7 bankruptcy case filed in this Court on April 24, 2013.

*Mr. Cedillo's Alleged Nondisclosures with Respect to the Hardware Store and the Hardware Store Transfer*

Web Holdings alleges that on October 30, 1996, K&R Hardware was incorporated under New York law, and that Mr. Cedillo was its president and its sole legal and equitable owner. Web Holdings alleges that K&R Hardware operated the Hardware Store located at 645 Myrtle

Avenue in Brooklyn.  And Web Holdings alleges that some fourteen years later, on January 26, 2011, K&R Hardware was dissolved by proclamation of the New York Secretary of State.  Web Holdings alleges that "[s]ubsequent to and as a result of the dissolution of K&R Hardware, the Hardware Store was operated by [Mr. Cedillo] as a sole proprietorship."  Compl. ¶ 23.

Web Holdings alleges that in his amended Statement of Financial Affairs, Mr. Cedillo failed to disclose that he was an officer, director, or shareholder of K&R Hardware within the six years preceding this bankruptcy case.

Mr. Cedillo responds that he inadvertently failed to disclose that he was an officer, director, or shareholder of K&R Hardware, but argues that he was forthcoming about his interest in K&R Hardware because, among other reasons, he listed the transfer of the Hardware Store to NY Electric in response to Question 10 of his Statement of Financial Affairs.

Web Holdings also alleges that on September 20, 2012, NY Electric was incorporated under New York law, and that Rosa Vasquez, *a/k/a* Sylvia Vasquez, *a/k/a* Rosa Sylvia Vasquez is its sole managing member.  Web Holdings also alleges that Mr. Cedillo and Ms. Vasquez have been married since 2013, and that prior to their marriage, they were live-in companions for thirty years.

Web Holdings alleges that pursuant to a bill of sale executed on October 1, 2012, Mr. Cedillo transferred all of his right, title, and interest in and to the Hardware Store and its assets to NY Electric for the stated consideration of $50,000 (the "Hardware Store Transfer").  Web Holdings alleges that the Hardware Store Assets included, among other things, trade fixtures, inventory, a cash register, a key cutting machine, and other hardware tools.  Web Holdings alleges that following the Hardware Store Transfer, NY Electric immediately assumed the management and operation of the Hardware Store at the 645 Myrtle Avenue location.

Web Holdings alleges that NY Electric, through Ms. Vasquez, executed a chattel mortgage stating that the $50,000 purchase price was payable to Mr. Cedillo, by NY Electric, in thirty-six consecutive monthly payments of $1,454.06, commencing on November 1, 2012, and continuing through October 1, 2015, with interest at an annual rate of three percent (the "Chattel Mortgage").  Web Holdings alleges that pursuant to the Chattel Mortgage, and as security for NY Electric's payment, NY Electric granted Mr. Cedillo a security interest in the Hardware Store Assets.  Web Holdings alleges that Mr. Cedillo failed to identify or disclose this security interest as an asset of his bankruptcy estate.

Additionally, Web Holdings alleges that NY Electric has made no payments to Mr. Cedillo in connection with the Hardware Store Transfer.  And Web Holdings alleges that Mr. Cedillo lists the amount owed to him by NY Electric as $1.00, not in excess of $50,000, on his Schedule B.

Mr. Cedillo responds that on October 1, 2012, he executed a bill of sale that transferred the Hardware Store Assets to NY Electric, and that the bill of sale provided that he, "individually and as sole shareholder of [K&R Hardware]," transferred the assets.  Answer ¶ 33.  But Mr. Cedillo also responds that he caused K&R Hardware to transfer the Hardware Store Assets to NY Electric, and that he, himself did not transfer the assets to NY Electric.

Mr. Cedillo also responds that he disclosed the Chattel Mortgage as an asset of his estate. And Mr. Cedillo does not dispute that NY Electric has made no payments on account of the Hardware Store Transfer, and that he listed the amounts due and owing to him by NY Electric as $1.00, not in excess of $50,000, on his Schedule B.

*Mr. Cedillo's Alleged Nondisclosures with Respect to Kevin & Richard Plumbing & Heating Supplies Corp.*

Web Holdings alleges that on June 14, 2010, Kevin & Richard Plumbing & Heating Supplies Corp. ("K&R Plumbing") was incorporated under New York law, and that thereafter, it operated a plumbing supply store located at 525 Park Avenue in Brooklyn (the "Plumbing Store").

Web Holdings alleges that both before and after the Petition Date, Mr. Cedillo has maintained that he has no ownership interest in K&R Plumbing.  But Web Holdings alleges that on December 17, 2012, the court in the State Court Action found that Mr. Cedillo owned, among other things, K&R Plumbing.  Web Holdings alleges that Mr. Cedillo failed to identify or disclose his legal and equitable ownership interest in K&R Plumbing and the Plumbing Store as an asset of his bankruptcy estate on his Schedule B.

Mr. Cedillo responds that he did not disclose his legal and equitable ownership interest in K&R Plumbing and the Plumbing Store as an asset of his bankruptcy estate on his Schedule B. Answer ¶ 48.

*Mr. Cedillo's Alleged Nondisclosures with Respect to the New York State Tax Debt and the Small Business Administration Debt*

Web Holdings alleges that at both the Rule 2004 Examination and the Section 341 Meeting, Mr. Cedillo testified that NY Electric agreed to assume certain of his personal obligations, including a $150,000 debt listed on his Schedule E that he owed to New York State on account of the Hardware Store's unpaid sales and withholding taxes (the "NYS Tax Debt"). Web Holdings alleges that the NYS Tax Debt assumed by NY Electric remains outstanding. And Web Holdings alleges that Mr. Cedillo failed to identify or disclose NY Electric's obligation to pay the NYS Tax Debt as an asset of his bankruptcy estate on his Schedule B, and similarly failed to identify or disclose NY Electric as a co-debtor on his Schedule H.

Web Holdings also alleges that NY Electric agreed to assume Mr. Cedillo's debt to the United States Small Business Administration (the "SBA"), which similarly arose from an unpaid obligation of the Hardware Store for which he was personally liable (the "SBA Debt"). Web Holdings alleges that during the Rule 2004 Examination, Mr. Cedillo testified that the SBA Debt has not been fully paid, either by him or by NY Electric. And as with the NYS Tax Debt, Web Holdings alleges that the SBA Debt was not disclosed as a claim on Mr. Cedillo's Schedules and Statements.

Mr. Cedillo responds that "he did not list NY Electric as a co-debtor or list NY Electric's assumption of state tax debt as an asset of the estate." Answer ¶ 36. Mr. Cedillo also acknowledges that he did not disclose the SBA Debt on his Schedules and Statements.

*Mr. Cedillo's Alleged Nondisclosures with Respect to His Income and Expenses*

Web Holdings also alleges that during the Rule 2004 Examination, Mr. Cedillo testified with respect to his relationship with Ms. Vasquez. Specifically, Web Holdings alleges that Mr. Cedillo testified that he and Ms. Vasquez shared a household for approximately the last thirty years, were married in 2013, and shared in the payment of household and family living expenses. And Web Holdings alleges that Mr. Cedillo testified that Ms. Vasquez was employed full-time. Web Holdings alleges that neither Ms. Vasquez's income nor the amounts contributed by her for the payment of their shared household and living expenses were disclosed by Mr. Cedillo on his Schedule I and Schedule J.

Web Holdings further alleges that Mr. Cedillo testified that in addition to the amounts received with respect to his employment with K&R Plumbing, he had various "side jobs," for which he received payment for work and labor. Compl. ¶ 52. Web Holdings alleges that Mr.

Cedillo did not identify or disclose the amounts received on either his Schedule I or his Statement of Financial Affairs.

And finally, Web Holdings alleges that Mr. Cedillo failed to disclose additional income received prior to the Petition Date, including amounts that he received in 2011, totaling $17,500, the amounts distributed to and withdrawn by him from K&R Plumbing, K&R Hardware, and NY Electric, and the amounts paid on his behalf by those same entities.

Mr. Cedillo responds that neither Ms. Vasquez's income nor the amounts contributed by her for the payment of their shared household and living expenses were disclosed by him on his Schedule I and Schedule J. Mr. Cedillo acknowledges that he testified to receiving modest amounts of income from "side jobs," and denies that he failed to disclose this additional income on his Schedules and Statements. Answer ¶¶ 52-53. Mr. Cedillo also states that he failed to disclose additional income that he received prior to the Petition Date.

*The Claims for Relief*

Web Holding asserts five claims for relief, and seeks summary judgment with respect to the First and Third Claims only.

In its First Claim for Relief, asserted under Bankruptcy Code Section 727(a)(2), Web Holdings claims that within the year preceding the Petition Date, Mr. Cedillo "transferred, removed, destroyed, mutilated, or concealed assets," including the Hardware Store Assets and his legal and equitable interests in K&R Plumbing, and did not receive any consideration in return. Compl. ¶ 58. And as a result, Web Holdings seeks a judgment denying a discharge to Mr. Cedillo, and moves for summary judgment on this claim.

In its Second Claim for Relief, asserted under Bankruptcy Code Section 727(a)(3), Web Holdings claims that Mr. Cedillo has "concealed, destroyed, mutilated, falsified, or failed to keep

or preserve" information from which Mr. Cedillo's financial affairs and condition or business transactions might be ascertained.  Compl. ¶ 63.  Web Holdings alleges that despite its requests, Mr. Cedillo has failed to produce or provide the information and documents requested, and that his failure to do so is not justified.  Compl. ¶¶ 64-67.  And as a result, Web Holdings seeks a judgment denying a discharge to Mr. Cedillo.

In its Third Claim for Relief, asserted under Bankruptcy Code Section 727(a)(4), Web Holdings claims that Mr. Cedillo "knowingly and fraudulently made a false oath or account in or in connection with" his Chapter 7 bankruptcy case.  Compl. ¶ 70.  And as a result, Web Holdings seeks a judgment denying a discharge to Mr. Cedillo, and moves for summary judgment on this claim.

In its Fourth Claim for Relief, asserted under Bankruptcy Code Section 727(a)(5), Web Holdings claims that Mr. Cedillo has failed satisfactorily to explain "any loss of his assets or deficiency of assets to meet his liabilities."  Compl. ¶ 74.  And as a result, Web Holdings seeks a judgment denying a discharge to Mr. Cedillo.

In its Fifth Claim for Relief, asserted under Bankruptcy Code Section 727(a)(6), Web Holdings claims that Mr. Cedillo has refused to comply with orders of this Court.  And as a result, Web Holdings seeks a judgment denying a discharge to Mr. Cedillo.

*This Summary Judgment Motion*

On July 21, 2016, Web Holdings filed this Summary Judgment Motion, supported by a memorandum of law and a statement of undisputed material facts pursuant to Local Bankruptcy Rule 7056-1.  On September 3, 2016, Mr. Cedillo filed a declaration in opposition to Web Holdings' Summary Judgment Motion and a counterstatement of undisputed material facts and objections to evidence pursuant to Local Bankruptcy Rule 7056-1.  And on September 6, 2016,

Mr. Cedillo filed a memorandum of law in opposition to Web Holdings' Summary Judgment

Motion.  On September 20, 2016, Web Holdings filed a reply memorandum of law in further

support of its Summary Judgment Motion.

The Court held conferences on the Summary Judgment Motion from time to time, at

which Web Holdings and Mr. Cedillo, each by counsel, appeared and were heard.  The Court

heard argument from counsel and closed the record at the November 21, 2016 hearing.  Over this

same period, and for some time thereafter, the parties engaged in settlement negotiations, both

independently and with the assistance of the Court.  The settlement negotiations were

unsuccessful, and on August 29, 2017, the Court reserved decision.

### The Applicable Legal Standards

#### *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by

Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that

there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the

suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the burden of demonstrating the absence of a genuine dispute as to

any material fact, and all of the inferences to be drawn from the underlying facts must be viewed

by the court in the light most favorable to the party opposing the motion.  *See Hayut v. State*

*Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (holding that the court's role is "to view the

evidence in the light most favorable to the party opposing summary judgment, to draw all

reasonable inferences in favor of that party, and to eschew credibility assessments").

Accordingly, the moving party must demonstrate that there is no genuine dispute as to a material

fact as to each element of its claim.  If it does not, then summary judgment will be denied.  *See*

*Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008), *aff'd*, 375 F. App'x 73 (2d

Cir. 2010) (citing *Anderson*, 477 U.S. at 250 n.4) (holding that summary judgment should be

denied where the moving party does not show that there is no genuine dispute as to a material

fact with respect to each essential element of the claim)).

Once the moving party satisfies its initial burden, "the burden then shifts to the

nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a

material fact for trial."  *Silverman v. United Talmudic Acad. Torah Vyirah, Inc. (In re Allou*

*Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011).  The nonmoving party "must do more

than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  *See Anderson*, 477 U.S. at 249-

50 (internal citations omitted) (observing that "if the evidence is merely colorable . . . or is not

significantly probative . . . summary judgment may be granted").

"Statements in the pleadings alone are not sufficient to meet this burden."  *In re Allou*

*Distribs., Inc.*, 446 B.R. at 49.  Rather, "[e]stablishing such facts requires going beyond the

allegations of the pleadings as the moment has arrived to 'put up or shut up.'"  *In re Eugenia VI*

*Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v.*

*Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *aff'd*, 370 F. App'x 197 (2d Cir. 2010), *cert.*

*denied*, 540 U.S. 811 (2003)).  "Unsupported allegations in the pleadings thus cannot create a

material issue of fact." *In re Eugenia VI Venture Holdings*, 649 F. Supp. 2d at 117.  As the

Supreme Court has observed, "Rule 56(e) . . . requires the nonmoving party to go beyond the

pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for

trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A party "must 'set forth' by affidavit

or other evidence 'specific facts' to survive a motion for summary judgment . . . and must

ultimately support any contested facts with evidence adduced at trial . . . ." *Bennet v. Spear*, 520

U.S. 154, 168 (1997).  As one court observed, "[t]he non-moving party may not establish that

there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse

party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that

there are genuine issues of material fact or law." *Beare v. Millington*, 2014 WL 1236750, at *3

(E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015).

Claims that sound in fraud raise additional considerations.  "Although summary judgment

may be warranted in certain circumstances even when examining state of mind, courts must be

cautions in such cases, and, as a result . . . disputes regarding intent are generally decided after a

trial/evidentiary hearing resolving such factual issues." *Adler v. Ng (In re Adler)*, 395 B.R. 827,

843 (Bankr. E.D.N.Y. 2015).

Other courts are in accord.  In *Redden v. Redden (In re Redden)*, the court held that "the

issue of [a] [d]ebtor's intent in making the representations and taking the actions alleged in the

complaint is a material issue which is not subject to adjudication by summary judgment."

*Redden v. Redden (In re Redden)*, 234 B.R. 49, 51 (Bankr. D. Del. 1999).  And in *Harris v.

Dunn*, the court found that "summary judgment based on the determination of subjective factors

such as intent . . . is seldom appropriate as such determinations require credibility evaluations

and the weighing of evidence." *Harris v. Dunn*, 48 So. 3d 367, 373 (La. Ct. App. 2010).  As the

court stated, "[the] circumstantial evidence that is usually necessary to prove intent requires the

trier of fact to choose from competing inferences, a task that is not appropriate in a summary

judgment proceeding." *Harris*, 48 So. 3d at 373.  At the same time, "[w]hile the issue of

fraudulent intent ordinarily cannot be resolved on summary judgment, it is also well-recognized

that the summary judgment rule would be rendered sterile if the mere incantation of intent would

operate as a talisman to defeat an otherwise valid motion." *In re Allou Distribs.*, 446 B.R. at 50

(citations and internal quotation marks omitted).

And finally, the denial of summary judgment in the face of a genuine dispute as to a

material fact does not amount to an endorsement of the movant's position.  *In re Allou Distribs.*,

446 B.R. at 50 (citing *Huff v. UARCO, Inc.*, 122 F.3d 374, 385-86 (7th Cir. 1997)).  Rather,

denial of summary judgment means only that the case should be heard by the trier of fact, and

cannot be resolved as a matter of law.

*Denial of Discharge Under Bankruptcy Code Section 727(a)(2)(A)*

By its First Claim, Web Holdings alleges that Mr. Cedillo is not entitled to a discharge

under Bankruptcy Code Section 727(a)(2) because he transferred all of his right, title, and

interest in the Hardware Store Assets to NY Electric on October 1, 2012, within one year of the

Petition Date of April 24, 2013, and did so with intent to hinder, delay, or defraud creditors of his

estate.  In the Summary Judgment Motion, Web Holdings seeks a judgment denying Mr. Cedillo

a discharge under this section.

As the Second Circuit has held, Bankruptcy Code Section 727 "imposes an extreme

penalty for wrongdoing," and as such, "it must be constructed strictly against those who object to

the debtor's discharge and 'liberally in favor of the bankrupt.'" *State Bank of India v. Chalasani*

*(In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting *Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir. 1976)).  This is consistent with "the well-accepted principle that the Bankruptcy Act was intended to permit the honest debtor to get a new start in life free from debt . . . ."  *In re Adlman*, 541 F.2d at 1003.  *See Agai v. Mihalatos (In re Mihalatos)*, 527 B.R. 55, 65 (Bankr. E.D.N.Y. 2015) (stating that "[i]t is well-settled that the denial of a debtor's discharge is a drastic remedy . . . ").

As explained by the Second Circuit, "to prove a § 727(a)(2) violation, a creditor must show 'an act (i.e. a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor),' and 'the party seeking to bar discharge must prove that *both* of these components were present during the one year period before bankruptcy.'"  *Republic Credit Corp. I (In re Boyer)*, 328 F. App'x 711, 715 (2d Cir. 2009) (quoting *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

In other words:

> [t]o prevail under section 727(a)(2)(A) of the [Bankruptcy] Code, a plaintiff must show, by a preponderance of the evidence, that: (1) the debtor transferred property; (2) said property belongs to the debtor; (3) the transfer occurred with actual intent to hinder, delay, or defraud; and (4) the transfer occurred within one year prior to the filing for bankruptcy.

*Najjar v. Kablaoui (In re Kablaoui)*, 196 B.R. 705, 708 (Bankr. S.D.N.Y. 1996).  "Discharge will be precluded under § 727(a)(2) if all of the above prongs have been proven by a preponderance of the evidence."  *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 663 (Bankr. S.D.N.Y. 2008).

A key component of Section 727(a)(2)(A) is that the property at issue was property of the debtor, so that the transfer diminished the debtor's bankruptcy estate.  "Property of the debtor" is defined by Bankruptcy Code Section 541(a), and that definition is broad indeed.  State law also

informs this definition, and as the Supreme Court has noted, "[i]n the absence of any controlling federal law, 'property' and 'interest[s] in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992). *See Kaufman v. Chalk & Vermilion Fine Arts, LLC*, 31 F. App'x 206, 208 (2d Cir. 2002) (noting that "[b]ecause the Bankruptcy Code does not define 'interests in property,' state law controls").

But the definition of property of the estate is not without bounds, and the language of Section 541(a) is "sufficiently circumscriptive" to exclude "property in which the debtor has a derivative interest." *Mcorp Mgmt. Sols., Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir. 1990). That is, and as one court has stated, "Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which the debtor has a direct proprietary interest." *In re Thurman*, 901 F.2d at 841.

A second key component of Section 727(a)(2)(A) is the debtor's intent. "In considering the issue of a debtor's transfer or concealment of assets with intent to hinder, delay or defraud a creditor, as described in § 727(a)(2)(A), the plaintiff must establish an actual intent to hinder, defraud or delay . . . ." *Glaser v. Glaser (In re Glaser)*, 49 B.R. 1015, 1019 (Bankr. S.D.N.Y. 1985). In other words, "constructive fraudulent intent cannot be the basis for denial of discharge" for purposes of Section 727(a)(2)(A). *In re Glaser*, 49 B.R. at 1019. *See Tese-Milner v. Gordon (In re Gordon)*, 2015 WL 269800, at *16 (Bankr. S.D.N.Y. Jan. 13, 2015) (holding that "[t]he statute requires actual intent to hinder, delay, or defraud creditors or the trustee. Constructive intent to defraud does not suffice").

Direct proof of actual intent to defraud is not the norm. Courts recognize that "fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct, because rarely does a debtor admit that he actually intended to defraud creditors." *In re*

*Glaser*, 49 B.R. at 1019.  The question of a debtor's fraudulent intent is a question of fact in a

Section 727 claim, and the court often looks to "the debtor's course of conduct and the

surrounding circumstances," in formulating its answer.  *In re Gordon*, 2015 WL 269800, at *16.

Courts in this Circuit recognize that "'[b]adges of fraud' have frequently been used as

circumstantial evidence to ascertain whether a debtor had fraudulent intent in making transfers

alleged to hinder, delay or defraud creditors."  *In re Gordon*, 2015 WL 269800, at *16.  These

badges of fraud include:

(1)     the lack or inadequacy of consideration [for the transfer];

(2)     the family, friendship, or close associate relationship between the parties [to the transfer];

(3)     the retention [by the transferor] of possession, benefit or use of the property in question;

(4)     the financial condition [of the transferor] both before and after the transaction in question;

(5)     the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)     the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

<u>*Denial of Discharge Under Bankruptcy Code Section 727(a)(4)(A)*</u>

By its Third Claim, Web Holdings alleges that Mr. Cedillo is not entitled to a discharge

under Bankruptcy Code 727(a)(4)(A) because he knowingly and fraudulently, in connection with

his bankruptcy case, made false oaths and accounts.  Specifically, Web Holdings alleges that Mr.

Cedillo made fraudulent and material misrepresentations or omissions in his Schedules and

Statements, and that his testimony during the Rule 2004 Meeting and the Section 341 Meeting

sheds light on the inconsistencies in his bankruptcy filings.  In the Summary Judgment Motion, Web Holdings seeks a judgment denying Mr. Cedillo a discharge under this section as well.

"[A] discharge under [Bankruptcy Code Section] 727 is a privilege, not a right, and may only be granted to the honest debtor." *In re Mihalatos*, 527 B.R. at 65.  This privilege comes with "the requirement that debtors act in good faith and provide full and honest disclosure." *Beer Sheva Realty Corp v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 138 (Bankr. E.D.N.Y. 2013).  For example, "a debtor is required to sign the [bankruptcy] petition under the penalty of perjury . . . [and] [t]hat oath 'must be regarded as serious business.'" *In re Pongvitayapanu*, 487 B.R. at 138 (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir. 2013)).  *See Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 715 (Bankr. D.S.C. 1995) (stating that "[t]he bankruptcy schedules and statements of affairs are carefully designed to elicit certain information necessary to the proper administration and adjudication of the case").  That is, "'[f]ull and honest disclosure' is required as it 'is crucial to the effective functioning of the bankruptcy system.  Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized.'" *In re Pongvitayapanu*, 487 B.R. at 138 (quoting *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008)).

A creditor objecting to the discharge of the debtor must prove by a preponderance of evidence that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (Bankr. E.D.N.Y. 2000) (quoting *Dubrowsky v. Estate of*

*Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000)).  If these elements are established, then the debtor's discharge will be denied.

As with the element of intent under Bankruptcy Code Section 727(a)(2)(A), "[f]raudulent intent must be shown by actual, not constructive fraud." *In re Dubrowsky*, 244 B.R. at 571. Specifically, "[t]he party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions." *In re Dubrowsky*, 244 B.R. at 571-72.

Additionally, the party objecting to discharge under Section 727(a)(4)(A) must prove that the debtor made the intentionally false statement "'with respect to a material matter, that is one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property.'" *In re Murray*, 249 B.R. at 228 (quoting *Walters v. Sawyer (In re Sawyer)*, 130 B.R. 384, 394 (Bankr. E.D.N.Y. 1991)).  )).  *See St. Clair v. Cadles of Grassy Meadows II, LLC*, 550 B.R. 655, 674 (E.D.N.Y. 2016) (holding that "'[a]n item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property'" (quoting *In re Murray*, 249 B.R. at 228)); *Gardner v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (stating that omissions are material if they interfere "with the Trustee's ability to discover assets for the estate").

Notably, Bankruptcy Code Section 727(a)(4)(A) "'does not contain an explicit materiality requirement.  Rather, the requirement was created by courts to ensure that debtors are not denied discharge for inconsequential or technical omissions.'" *Cadles of Grassy Meadows II, LLC*, 550 B.R. at 674.  At the same time, "a debtor may . . . make a misstatement and prove that the misstatement caused minimal harm to the estate.  But 'the determination of relevance

and importance of the question is not for the debtor to make.'" *HSBC Bank USA v. Handel (In re Handel)*, 266 B.R. 585, 590 (Bankr. S.D.N.Y. 2001) (quoting *Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)*, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)).

## Discussion

### *Whether Web Holdings Has Shown that It Is Entitled to Summary Judgment on its First Claim for Relief – Denial of Discharge Under Bankruptcy Code Section 727(a)(2)*

Web Holdings seeks the entry of an order granting partial summary judgment in its favor denying Mr. Cedillo a discharge under Bankruptcy Code Section 727(a)(2), on grounds, among others, that the Hardware Store Assets were Mr. Cedillo's property, and that he transferred the Hardware Store Assets with the actual intent to hinder, delay, or defraud his creditors.

Mr. Cedillo responds that summary judgment is not warranted. He states that the Hardware Store Assets were not his property when the assets were transferred to NY Electric, and disputes that they were transferred with intent to hinder, delay, or defraud his creditors. At a minimum, Mr. Cedillo argues that there are genuine disputes as to material facts as to whether the Hardware Store Assets were his property, whether he made the transfer, and whether he made the transfer with intent to hinder, delay, or defraud.

The record shows that the parties agree as to certain material facts that concern this claim, and disagree as to others, as follows.

### *K&R Hardware and the Hardware Store Assets*

Web Holdings and Mr. Cedillo agree that on October 30, 1996, Mr. Cedillo incorporated K&R Hardware, and that from approximately October 1996 through September 2012, K&R Hardware operated the Hardware Store at the same Myrtle Avenue location in Brooklyn. They also agree that on December 17, 2012, the New York Supreme Court, Kings County, entered an order stating that Mr. Cedillo owned K&R Hardware Corp. and K&R Plumbing.

But despite the state court ruling, Web Holdings and Mr. Cedillo disagree with respect to the ownership of K&R Hardware and the Hardware Store, including whether Mr. Cedillo was the sole equitable owner of K&R Hardware. That is, Mr. Cedillo states that he "wholly disagreed with the Court ruling and attempted to retain an attorney to move for reconsideration of the ruling," and further states that "he and his wife were the equitable owners of K&R Hardware" and that "he and his wife operated the store." Pl's Stmt. ¶¶ 17, 30, 31; Def's Counterstmt. ¶¶ 17, 30, 31.

*The Hardware Store Transfer*

Web Holdings and Mr. Cedillo agree that on October 1, 2012, K&R Hardware and the Hardware Store Assets were transferred to NY Electric. They also agree that the purchase price for the Hardware Store Assets was $50,000, reflected in a note. Web Holdings and Mr. Cedillo agree that NY Electric, by Ms. Vasquez, "executed a Promissory Note . . . in favor of the Debtor promising to pay [$50,000] to the Debtor . . . ." Pl's Stmt. ¶ 51; Def's Counterstmt. ¶ 51. Web Holdings and Mr. Cedillo agree that "[n]o part of the [$50,000] has been paid by NY Electric to the Debtor." Pl's Stmt. ¶ 53; Def's Counterstmt. ¶ 53. And they agree that as additional consideration, NY Electric assumed the NYS Tax Debt and the SBA Debt.

However, Web Holdings and Mr. Cedillo disagree with respect to two significant material facts, which are whether Mr. Cedillo himself or K&R Hardware transferred K&R Hardware's assets to NY Electric, and whether the Hardware Store Assets were Mr. Cedillo's property at the time of the transfer.

*The Question of Intent*

Web Holdings and Mr. Cedillo disagree with respect to a key element of Web Holdings' Section 727(a)(2) claim, which is whether Mr. Cedillo acted with intent to hinder, delay, or

defraud his creditors, including Web Holdings, when he "transferred, removed, destroyed, mutilated, or concealed" his assets.

The elements of a claim to deny a debtor's discharge under Bankruptcy Code Section 727(a)(2)(A) are that "(1) the debtor transferred property; (2) said property belongs to the debtor; (3) the transfer occurred with actual intent to hinter, delay, or defraud; and (4) the transfer occurred within one year prior to the filing for bankruptcy." *In re Kablaoui*, 196 B.R. at 708. The Court considers each of these elements in turn.

*Whether Web Holdings Has Established that Mr. Cedillo Transferred the Hardware Store Assets*

The first element that Web Holdings must establish is that Mr. Cedillo transferred property. That is, Web Holdings must show that there is no genuine dispute as to a material fact that Mr. Cedillo transferred the Hardware Store Assets to NY Electric.

Web Holdings argues that Mr. Cedillo transferred the Hardware Store Assets to NY Electric on October 1, 2012. In support of its argument, Web Holdings cites the deposition testimony of Mr. Cedillo, in which Mr. Cedillo states that he sold the Hardware Store Assets to NY Electric. And Web Holdings points to the October 1, 2012 bill of sale, which states that "Cesar M. Cedillo, *both individually and as sole shareholder* of Kevin and Richard Hardware Corp., formerly a New York Corporation, dissolved by proclamation on January 26, 2011," transferred the Hardware Store Assets to NY Electric. Pl's Mem. Ex. 25 (Bill of Sale) (emphasis added).

Mr. Cedillo responds, in substance, that he did not transfer property in which he had an interest to NY Electric within one year of the Petition Date. Mr. Cedillo argues that "[t]he Debtor caused K&R Hardware to transfer its assets to NY Electric," and that "[t]he dissolution by proclamation of K&R Hardware did not revert title to the corporate assets of the Debtor."

Def's Counterstmt. ¶¶ 42-43.  Mr. Cedillo argues that "a dissolved corporation continues to survive only for the purpose of liquidating its assets and satisfying any existing liabilities and obligations."  Def's Mem., ECF No. 23, at 11.  That is, Mr. Cedillo argues that the transfer of the Hardware Store Assets did not amount to a transfer of his property, and instead was a transfer of property of K&R Hardware, "since Hardware had significant unpaid liabilities . . . ."  Def's Mem. at 11.

"Transfer" is defined in Bankruptcy Code Section 101(54) as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with – (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54)(D)(i)-(ii).  "Although the legislative history offers no guidance in interpreting 'transfer' in the context of Section 727(a)(2)(A), the legislative history of Section 101(54), which defines 'transfer,' explains that '[t]he definition of transfer is as broad as possible'" to include any disposition of property or an interest in property.  *Martin v. Bajgar (In re Bajgar),* 104 F.3d 495, 498 (1st Cir. 1997) (quoting S. Rep. No. 989, 95th Cong. 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813)).

Web Holdings and Mr. Cedillo do not dispute that on October 1, 2012, K&R Hardware and the Hardware Store Assets were transferred to NY Electric.  Rather, the parties dispute whether *Mr. Cedillo himself* or *K&R Hardware* transferred those assets.

Here, the record shows that Mr. Cedillo testified at his deposition that he transferred the Hardware Store Assets to NY Electric:

Q:      Did you transfer the hardware store to New York Electric?

A:      I sold it, yes.

Q:      You sold it?

A:      Yes.

Pl's Mem. Ex. 20 (Deposition of Cesar Cedillo) at 17.

The record also shows that the bill of sale provides  that "Cesar M. Cedillo, both individually and as sole shareholder of Kevin and Richard Hardware Corp., formerly a New York Corporation, dissolved by proclamation on January 26, 2011," transferred the Hardware Store Assets to NY Electric.  Pl's Mem. Ex. 25 (Bill of Sale).

And as such, the record shows that Mr. Cedillo transferred the Hardware Store Assets in both his individual capacity and on behalf of K&R Hardware.  As a consequence, Web Holdings has shown that there is no genuine dispute as to a material fact that a transfer of the Hardware Store Assets occurred, and that Mr. Cedillo made that transfer.

For these reasons, and based on the entire record, Web Holdings has established that there is no genuine dispute as to a material fact as to the first element of its Section 727(a)(2)(A) claim, that Mr. Cedillo transferred the Hardware Store Assets.

### *Whether Web Holdings Has Established that the Transfer of the Hardware Store Assets Was a Transfer of an Interest of Mr. Cedillo in Property*

The second element that Web Holdings must establish is that the transferred property belonged to Mr. Cedillo.  That is, Web Holdings must show that there is no genuine dispute as to a material fact that at least some of the transferred Hardware Store Assets to NY Electric constituted Mr. Cedillo's property.

Web Holdings argues that Mr. Cedillo operated the Hardware Store following the dissolution of K&R Hardware and up until its transfer to NY Electric, and that "if even one nail or screw transferred to NY Electric was acquired by the Debtor while operating [K&R Hardware Store] after K&R Hardware's dissolution, then an actionable transfer of 'property of the debtor' has been demonstrated for purposes of [Section] 727(a)(2)(A)."  Reply Mem., ECF No. 25, at 4. And Web Holdings argues that "at least some portion of the Hardware Store Assets transferred to

NY Electric were acquired after K&R Hardware had been dissolved and while the Debtor was operating the Hardware Store as a sole proprietorship."  Reply Mem. at 2.

Mr. Cedillo responds that the "Hardware's assets belonged to the corporate entity and not [to him] individually at the time of transfer."  Def's Mem. at 11.  He argues that because K&R Hardware had significant outstanding tax debts at the time of its dissolution, it was authorized to "'sell its assets for sale, . . . discharge or pay its liabilities, and do other acts in furtherance of winding down.'"  Opp. at 11 (quoting *Kos P. St. Realty Corp. v. Elw, Inc.*, No. LT 525-2014, slip op. at 12 (Peekskill City Ct. June 26, 2015)).  That is, Mr. Cedillo argues that title to the Hardware Store Assets remained with K&R Hardware and did not pass to him individually.

"Because the Bankruptcy Code does not define 'interests in property,' state law controls." *Kaufman*, 31 F. App'x at 208.  Under New York Business Corporation Law ("NY BCL") Sections 1005(a) and 1009, following the dissolution of a corporation, "[a] corporation shall carry on no business except for the purposes of winding up its affairs."  NY BCL § 1005(a)(1). "The corporation shall proceed to wind up its affairs, with power to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business."  NY BCL § 1005(a)(2). "Until dissolution is complete, title to the corporate assets remains in the corporation."  *Rodgers v. Logan*, 121 A.D.2d 250, 253 (N.Y. App. Div. 1st Dep't 1986).

Following dissolution, "the shareholders to whom are distributed the remaining assets of the corporation are said to 'hold the assets which they received in trust for the benefit of creditors.'"  *Rodgers*, 121 A.D.2d at 253 (quoting *Plastic Contact Lens Co. v. Frontier of the Northeast, Inc.*, 324 F. Supp. 213, 220 (W.D.N.Y. 1969), *aff'd*, 441 F.2d 67 (2d Cir. 1971)).  *See Plastic Contact Lens Co.*, 324 F. Supp. at 220 (stating that "upon the dissolution of a

corporation, provisions must be made for the payment of liabilities before the distribution of assets to the shareholders. The defendant shareholders hold the assets which they received, in trust for the benefit of creditors.").

If the individual shareholders and officers of a dissolved corporation continue to conduct a corporation's business post-dissolution, and not for the purposes of winding up the former corporation's affairs, they may become personally liable for obligations incurred by the corporation during its post-dissolution activities.  As one court found, where the defendant "fail[ed] to show that entering into the lease was necessary to the winding up of the corporation's affairs," the defendant was "personally liable for the rent due under the subject lease . . . ." *Pa. Bldg. Co. v. Schaub*, 14 A.D.3d 365, 366 (N.Y. App. Div. 1st Dep't 2005).

As another court held, the plaintiffs were entitled to summary judgement against the individual defendants "based upon evidence establishing that those defendants were . . . officers of the corporate defendant and that the corporate defendant, a general contractor, although dissolved by proclamation for nonpayment of franchise taxes . . . was utilized to enter into subcontract agreements with plaintiff, and then failed to pay plaintiff for its services thereunder." *Keystone Mech. Corp. v. Conde*, 309 A.D.2d 627, 627 (N.Y. App. Div. 1st Dep't 2003).  *See Brandes Meat Corp. v. Cromer*, 146 A.D.2d 666, 667 (N.Y. App. Div. 2d Dep't 1989) (concluding that "[t]he defendant, in effect, purported to act on behalf of a corporation which had neither a de jure nor a de facto existence . . . and he is therefore personally responsible for the obligations which he incurred.").

To the same effect, if the individual shareholders and officers of a dissolved corporation continue to conduct the corporation's business after it is dissolved, and do so for purposes other than winding up the former corporation's affairs, they may become personally responsible for the

business activities of the enterprise.  In one case, a corporation entered into "a new business relationship with plaintiff for the purpose of obtaining fuel deliveries and supplies" nearly ten years after it was dissolved.  *Long Oil Heat Inc. v. Polsinelli Jr.*, 128 A.D.3d 1296, 1298 (N.Y. App. Div. 3d Dep't 2015).  There, the court found that the corporation's activities did not "constitute [the] winding up of its corporate affairs but, rather, amount to the pursuit of new business for which [the defendant] indeed is personally liable."  *Long Oil Heat Inc.*, 128 A.D.3d at 1298.

Here, the record shows that the Hardware Store Assets were transferred on October 1, 2012, within one year preceding the April 24, 2013 Petition Date.  The record also shows that at the time of the transfer, K&R Hardware had significant unpaid liabilities that were owed to, among others, New York State.  And Mr. Cedillo stated under oath that he "would transfer the assets to [NY Electric] and that corporation would settle my outstanding tax debt" and that "the Hardware Store [A]ssets were transferred to NY Electric on October 1, 2012."  Cedillo Decl. ¶¶ 34, 36.

The record also shows that Mr. Cedillo was the sole legal owner of K&R Hardware and an equitable owner of K&R Hardware with Ms. Vasquez, and that he was the "responsible person" for K&R Hardware with respect to its obligations owed to New York State.  Def's Counterstmt. ¶¶ 30, 33; Cedillo Decl. ¶ 28.  Web Holdings and Mr. Cedillo do not dispute that the transfer of the Hardware Store Assets did not occur until October 1, 2012.

And the record shows that Mr. Cedillo continued to operate K&R Hardware over the course of some twenty months between K&R Hardware's dissolution on January 26, 2011 and the transfer of K&R Hardware to NY Electric on October 1, 2012.  That is, Mr. Cedillo, as an officer of K&R Hardware, continued to carry on the corporation's business post-dissolution,

"and not for the purposes of winding up the former corporation's affairs." As a result, Mr. Cedillo remained personally liable for the obligations that K&R Hardware incurred between January 26, 2011 and October 1, 2012. In other words, any property acquired as a result of carrying on the business after it was dissolved belonged to Mr. Cedillo, and was not property of the dissolved corporation.

As a consequence, Web Holdings has shown that there is no genuine dispute as to a material fact that at least some of the Hardware Store Assets were property of Mr. Cedillo. That is, Web Holdings has established that there is no genuine dispute as to a material fact as that at least some of the Hardware Store Assets constituted property of Mr. Cedillo at the time of their transfer to NY Electric.

For these reasons, and based on the entire record, Web Holdings has established that there is no genuine dispute as to a material fact as to the second element of its Section 727(a)(2)(A) claim, that the transfer of the Hardware Store Assets was a transfer of an interest of Mr. Cedillo in property.

*Whether Web Holdings Has Established that Mr. Cedillo Transferred the Hardware Store Assets with Intent To Hinder, Delay, or Defraud Creditors of His Estate*

The third element that Web Holdings must establish is that Mr. Cedillo transferred the property with intent to hinder, delay, or defraud his creditors. That is, Web Holdings must show that there is no genuine dispute as to a material fact that Mr. Cedillo transferred the Hardware Store Assets to NY Electric with intent to hinder, delay, or defraud creditors of his estate, including Web Holdings.

Web Holdings argues that Mr. Cedillo transferred the Hardware Store Assets with actual intent to hinder, delay, or defraud his creditors, including Web Holdings, Carver, the SBA, and New York State. Web Holdings identifies several facts and circumstances surrounding the

transfer, and argues that these "badges of fraud" point to the conclusion that the transfer was made with fraudulent intent.

Mr. Cedillo responds, in substance, that Web Holdings has not come forward with evidence sufficient to meet the standard necessary to establish that he acted with fraudulent intent.

At the outset, it is worth noting that the barrier to establishing the absence of a genuine dispute as to a material fact with respect to an individual's intent is high. The Second Circuit has identified common badges of fraud that support the inference of an intent to hinder, delay, or defraud creditors. As noted above, these include:

(1)     the lack or inadequacy of consideration;

(2)     the family, friendship or close associate relationship between the parties;

(3)     the retention of possession, benefit or use of the property in question;

(4)     the financial condition of the party sought to be charged both before and after the transaction in question;

(5)     the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)     the general chronology of the events and transactions under inquiry.

*In re Kaiser*, 722 F.2d at 1582-83. At the same time, these badges of fraud need to be viewed "in the context of the case and any probative evidence of innocent intent." *Kramer v. Chin (In re Chin)*, 492 B.R. 117, 131 (Bankr. E.D.N.Y. 2013).

Here, Web Holdings relies on a number of these badges, and Mr. Cedillo responds to them as follows.

The lack or inadequacy of consideration. Web Holdings argues that "[a]lthough the stated purchase price for the Hardware Store Assets was $50,000.00, and on account of which NY

Electric (by Rosa [Vasquez]) executed a Promissory Note in favor of [Mr. Cedillo], no monies have been paid by NY Electric to the Debtor." Pl's Mem. at 8. Additionally, Web Holdings argues that "although [Mr. Cedillo] has asserted that NY Electric agreed to pay the NYS tax obligations and/or to pay amounts owed in connection with [the SBA] loan . . . it is not disputed that said debts have not been paid." Pl's Mem. at 8-9. And Web Holdings argues that Mr. Cedillo has not made a demand upon NY Electric "for payment of the purported $50,000.00 cash consideration or to pay any debt obligation allegedly assumed by NY Electric," or "to enforce the security interest in the Hardware Store Assets granted to him by way of the Chattel Mortgage as security for [NY Electric's] obligations to [Mr. Cedillo]." Pl's Mem. at 9.

In response, Mr. Cedillo does not dispute that no part of the cash consideration for the Hardware Store Assets has been paid by NY Electric. Mr. Cedillo also does not dispute that although NY Electric agreed to pay the NYS Tax Debt and the SBA Debt as additional consideration for the Hardware Store Assets, the debts have not been paid. But Mr. Cedillo argues that NY Electric's "subsequent inability to make payments as anticipated by the parties does not negate the buyer's [NY Electric's] intentions at the time of the transfer." Def's Mem. at 12. Mr. Cedillo also argues that his "bankruptcy attorney . . . [has] asked Rosa [Vasquez] to make the payments, but she stated she is unable to do so," and that the reason for the unpaid obligations to New York State and the SBA is because NY Electric has insufficient funds to make those payments. Cedillo Decl. ¶ 40.

Here, the record shows that at the time of the sale of the Hardware Store Assets, consideration was given by NY Electric in the form of a $50,000 note and the assumption of certain liabilities – the NYS Tax Debt and the SBA Debt. The record also shows that following the sale of the Hardware Store Assets, NY Electric has not made any payments on the note or

those liabilities.  But the record does not show that *at the time* of the sale of those assets, there

was a lack or inadequacy of consideration.  For these reasons, this badge does not weigh in favor

of a finding of fraudulent intent.

The family, friendship or close relationship between the parties.  Web Holdings argues

that the family relationships among the parties involved in the transfer of the assets supports the

inference that the transfer was the product of fraudulent intent.  Specifically, Web Holdings

alleges that Mr. Cedillo's close relationship with Ms. Vasquez, the sole owner and managing

member of NY Electric and Mr. Cedillo's live-in companion since 1989 and wife since 2013,

supports the inference that the transfer of the Hardware Store Assets to NY Electric was carried

out by the parties with intent to hinder, delay, or defraud creditors of Mr. Cedillo's estate,

including Web Holdings.

Mr. Cedillo responds that the family relationship among the principals of the parties does

not support an inference of fraudulent intent.  He argues that in light of K&R Hardware's "large

tax debt and very little assets," the Hardware Store Assets "could not have been sold to a

disinterested party."  Def's Mem. at 13.  He also argues that the Hardware Store Assets were not

sold to Ms. Vasquez, but to NY Electric.  Def's Mem. at 12.  And he states that after working

with a business consultant, Humbert Suremott, Mr. Suremott advised Mr. Cedillo that "the

Hardware Store could not continue to operate and that a new entity had to be created with a clean

slate to operate the store and repay the taxes owed to [New York State]," and that soon

thereafter, NY Electric was incorporated with Ms. Vasquez as its sole managing member.

Cedillo Decl.¶ 32.

Mr. Cedillo states that Mr. Suremott "spoke with a representative of NYS and informed

[New York State] that [Mr. Cedillo] would transfer the [Hardware Store Assets] to a newly

formed corporation and that corporation would settle [his] outstanding tax debt." Cedillo Decl.¶ 34. He also states that "Suremott helped my wife incorporate NY Electric Supplies LLC" and that "[w]ith the assistance of an attorney Marty O'Shea representing my wife, the Hardware Store [A]ssets were transferred to NY Electric on October 1, 2012." Cedillo Decl. ¶¶ 35, 36. And he states that "we never intended payments from NY Electric to go to anyone but my creditors." Cedillo Decl. ¶ 38.

Here, the record shows that on September 20, 2012, NY Electric was incorporated under New York law and that Ms. Vasquez, Mr. Cedillo's wife, is its sole managing member. The record also shows that NY Electric was incorporated for the purpose of acquiring the Hardware Store Assets and assuming certain liabilities, including the NYS Tax Debt and the SBA Loan. And the record shows that less than two weeks after it was formed, on October 1, 2012, NY Electric acquired those assets, and that Ms. Vasquez, his wife, was represented by her own counsel in connection with that transaction. That is, the record shows that Mr. Cedillo and K&R Hardware transferred the Hardware Store Assets to NY Electric, a new entity created for the purpose of acquiring those assets and controlled by Ms. Vasquez, his wife. In substance, this amounted to a transaction between Mr. Cedillo and Ms. Vasquez, for the purpose of shifting certain of Mr. Cedillo's liabilities to NY Electric. And even if no other buyer could be found, the advice of a business consultant was sought, and separate counsel represented Ms. Vasquez, the circumstances suggest the possibility of something other than an arm's-length transaction. For these reasons, this badge weighs to some extent in favor of a finding of fraudulent intent.

The retention of possession, benefit, or use of the property in question. Web Holdings argues that after the transfer of the Hardware Store Assets to NY Electric, Mr. Cedillo continued to operate the Hardware Store at the 645 Myrtle Avenue location in Brooklyn through at least

January 2016.  Web Holdings also argues that Mr. Cedillo acknowledges that he conducted his hardware store business at the NY Electric store location in an affidavit that he signed in July 2014.  And Web Holdings argues that "[e]ven if NY Electric did in fact operate the Hardware Store, [Mr. Cedillo] still retained the benefit and/or use of the Hardware Store Assets given that Rosa, [Mr. Cedillo's] wife, is the sole owner of NY Electric."  Pl's Mem. at 9.

Mr. Cedillo responds that he gave up control of the Hardware Store in October 2012, and that since that time, NY Electric, not he, operated the business.  As a result of this transfer of control, he urges that he did not have possession, benefit, or use of the transferred property – that is, the Hardware Store Assets.

Mr. Cedillo also acknowledges that he signed an affidavit in July 2014 which states that he was conducting his hardware store business at the NY Electric store location.  But he argues that "he is unable to read, and he signed the affidavit without realizing it contained this erroneous assertion."  Def's Mem. at 13.  And Mr. Cedillo states that he speaks English but cannot read or write in English, and that he "only attended school until the age of thirteen in Ecuador and completed no formal education since [immigrating] to the United States in 1989 with [his] family."  Cedillo Decl. ¶ 2.

Here, the record shows that, on the one hand, Mr. Cedillo and K&R Hardware transferred the ownership of the Hardware Store Assets to NY Electric, owned by Mr. Cedillo's wife, in October 2012, and that Mr. Cedillo stated in an affidavit in July 2014 that he conducted the hardware store business at the NY Electric store location.  The record also shows that Mr. Cedillo has limited fluency in English, and has disavowed that affidavit.  And the record does not include other direct or indirect evidence as to the extent of Mr. Cedillo's personal ongoing involvement in the Hardware Store business, including whether he possessed, benefited from, or

used that business.  For these reasons, there remain genuine disputes of material fact as to this

badge, and it weighs neither in favor of nor against a finding of fraudulent intent.

> The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors.  Web Holdings argues that at the time of the transfer of the Hardware Store Assets

to NY Electric, Mr. Cedillo's financial condition was "dire."  Pl's Mem. at 9.  It notes that at the

time of the transfer:

(a)    [Mr. Cedillo] owed NYS approximately $170,000 in tax obligations as the "responsible person" for K&R Hardware;

(b)    [Mr. Cedillo] owed Web Holdings $413,812.49 (plus interest) under the Judgment;

(c)    Carver Bank was prosecuting three (3) separate foreclosure actions involving claims against [Mr. Cedillo] to recover substantial mortgage deficiency amounts under personal guarantees executed by [him] and on account of which judgment for amounts totaling $363,750.98 has been or would shortly be entered against him; and

(d)    [Mr. Cedillo] owed substantial amounts on account of his personal guarantee of K&R Hardware's SBA loan.

Pl's Mem. at 9 (internal citations omitted).

Mr. Cedillo responds, in substance, that the transfer of the Hardware Store Assets was

part of the winding down of K&R Hardware.  Mr. Cedillo states that NY Electric was formed,

following the advice of his business consultant Mr. Suremott, in order to settle his outstanding

tax debt.  Mr. Cedillo also argues that NY Electric also agreed to assume the SBA Debt.  And

Mr. Cedillo states that he and Ms. Vasquez "never intended payments from NY Electric to go to

anyone but [his] creditors," and that they both "understood that any repayment for the transfer

would go to the Hardware Store creditors, and not [him] personally."  Cedillo Decl. ¶ 38.

Here, the record shows at the time of the transfer of the Hardware Store Assets by Mr. Cedillo to NY Electric, Mr. Cedillo owed significant amounts to *several* creditors, including New York State, Web Holdings, and Carver.  The record shows that following the advice of a business consultant, Mr. Cedillo and K&R Hardware made a *single* transfer of the Hardware Store Assets to NY Electric, and that the transfer occurred after the onset of his financial difficulties.  But debts owed to several creditors are not the same as a pattern or series of events.  And the record does not show that Mr. Cedillo engaged in a pattern or series of transactions or course of conduct after his financial difficulties arose.  For these reasons, this badge does not weigh in favor of a finding of fraudulent intent.

The general chronology of the events and transactions under inquiry.  Web Holdings argues that the chronology of events leading up to the transfer of the Hardware Store Assets, and the circumstances of the transfer itself, demonstrate Mr. Cedillo's fraudulent intent.  Specifically, Web Holdings notes:

(a)     NY Electric was incorporated eight (8) days after the State Supreme Court's issuance of its Order dated September 12, 2012, directing [Mr. Cedillo] to 'produce . . . all stock certificates in all companies in which he is a shareholder;'

(b)     [Mr. Cedillo's] transfer of the Hardware Store Assets to NY Electric was made in violation of a restraining notice that had been served upon [Mr. Cedillo] by Web Holdings in aid of enforcement of [its] Judgment; and

(c)     [Mr. Cedillo's] transfer of the Hardware Store Assets to NY Electric was made nine (9) days prior to a hearing scheduled to be held on October 10, 2012 in the State Supreme court in connection with [the September 12, 2012 Order] . . . and at the conclusion of which an Order was issued prohibiting [Mr. Cedillo's] 'transfer any of his property or any interest that he was in any property, outside of the ordinary course of business.'

Pl's Mem. at 9-10 (internal citations omitted).  Web Holdings argues that this pattern and chronology "paints a clear picture of someone besieged by the collection efforts of many of his

creditors taking deliberate and intentional steps to secrete assets which may have otherwise been available to satisfy . . . creditors" and that those transfers were "to a family member for no consideration" just as he "retain[ed] the benefits and use" of the assets.  Pl's Mem. at 10.

Mr. Cedillo responds, in substance, that the facts and circumstances surrounding the transfer of the Hardware Store Assets do not support an inference of fraudulent intent.  In support of his argument, Mr. Cedillo argues, among other things, that he "believed that the assets transferred belonged to K&R Hardware, not [Mr. Cedillo]," and that the "restraining notice was issued against [Mr. Cedillo] personally."  Def's Counterstmt. ¶ 49.

Here, the record shows that Mr. Cedillo and K&R Hardware transferred the Hardware Store Assets to a newly-formed entity owned by Ms. Vasquez, his wife.  The record also shows that NY Electric provided consideration in the form of a $50,000 note and the assumption of the NYS Tax Debt and the SBA Debt – but the record also shows that this consideration has yielded no value to Mr. Cedillo or his creditors.  And the record does not establish whether Mr. Cedillo retained the possession, benefit, or use of the Hardware Store Assets and business enterprise.

More generally, the record does not show that the transfer of the Hardware Store Assets was somehow part of a larger pattern or series of transactions or course of conduct after Mr. Cedillo encountered financial difficulties, nor does that transaction appear to be part of a larger chronology of events evidencing Mr. Cedillo's fraudulent intent.  For these reasons, this badge does not weigh in favor of a finding of fraudulent intent.

For these reasons, and based on the entire record, Web Holdings has not established that there is no genuine dispute as to a material fact as to the third element of its Section 727(a)(2)(A) claim, that Mr. Cedillo transferred the Hardware Store Assets with actual intent to hinder, delay, or defraud his creditors.

*Whether Web Holdings Has Established that the Transfer of the Hardware Store Assets*
*Occurred Within One Year of the Petition Date*

The fourth element that Web Holdings must establish is that the property was transferred

within one year of the date that Mr. Cedillo filed his bankruptcy petition.  That is, Web Holdings

must show that there is no genuine dispute as to a material fact that the transfer of the Hardware

Store Assets to NY Electric occurred within one year of April 24, 2013, the date that Mr. Cedillo

commenced his bankruptcy case.

Web Holdings alleges that Mr. Cedillo transferred the Hardware Store Assets to NY

Electric on October 1, 2012.

Mr. Cedillo disputes that he transferred the Hardware Store Assets, and states that he

caused K&R Hardware to transfer the Hardware Store Assets to NY Electric, and that he,

himself, did not transfer the assets to NY Electric.

Here, the record shows that whether it was Mr. Cedillo himself or K&R Hardware who

transferred the assets, the assets were transferred to NY Electric on October 1, 2012, as

evidenced by the bill of sale.  Because Mr. Cedillo filed his bankruptcy petition on April 24,

2013, the October 1, 2012 transfer occurred within one year of the petition date.

For these reasons, and based on the entire record, Web Holdings has established that

there is no genuine dispute as to a material fact as to the fourth element of its Section

727(a)(2)(A) claim, that the transfer occurred within one year prior to the filing of Mr. Cedillo's

bankruptcy petition.

*                *                *

In sum, Web Holdings has shown that there is no genuine dispute as to a material fact as

to the first element of its First Claim for Relief, to deny Mr. Cedillo a discharge pursuant to

Bankruptcy Code Section 727(a)(2)(A), that Mr. Cedillo transferred the Hardware Store Assets,

the second element of this claim, that the transfer of the Hardware Store Assets was a transfer of

an interest of Mr. Cedillo in property, and the fourth element of this claim, that the transfer of the

Hardware Store Assets occurred within one year of the Petition Date.  But Web Holdings has not

shown that there is no genuine dispute as to the third element of this claim, that Mr. Cedillo

transferred the Hardware Store Assets with intent to hinder, delay, or defraud his creditors.  For

these reasons, and based on the entire record, Web Holdings' Motion for Summary Judgment on

the First Claim for Relief is denied.

### *Whether Web Holdings Has Shown that It Is Entitled to Summary Judgment on its Third Claim for Relief – Denial of Discharge Under Bankruptcy Code Section 727(a)(4)(A)*

Web Holdings seeks the entry of an order granting partial summary judgment in its favor

denying Mr. Cedillo a discharge under Bankruptcy Code Section 727(a)(4)(A) on grounds,

among others, that Mr. Cedillo knowingly and fraudulently, in connection with his bankruptcy

case, made false oaths and accounts.  Specifically, Web Holdings argues that Mr. Cedillo made

false statements under oath in his Schedules and Statements, and that this was brought to light

during his testimony at the Rule 2004 Examination and the Section 341 Meeting.

Mr. Cedillo responds that summary judgment is not warranted.  He denies that he

intentionally omitted or misstated information in his Schedules and Statements, and asserts that

he has been forthcoming to the best of his ability in all of his representations in his bankruptcy

case.  Here too, as with Web Holdings' First Claim for Relief, he argues, at a minimum, that

there are genuine disputes as to material facts as to whether he knowingly made false statements

under oath in connection with his bankruptcy case and whether he made any false statements

with the intent to deceive his creditors.

And as with Web Holdings' First Claim for Relief under Bankruptcy Code Section 727(a)(2), the record shows that the parties agree as to certain facts that concern this claim, and disagree as to others, as follows.

## *The False Statements*

Web Holdings and Mr. Cedillo agree as to several material facts in connection with the disclosures in Mr. Cedillo's Schedules and Statements.  They agree that at the time that the Hardware Store Assets were transferred to NY Electric, Mr. Cedillo was obligated under a personal guarantee that he executed in connection with the SBA Debt, and that Mr. Cedillo did not disclose the SBA Debt on his Schedules and Statements.  Web Holdings and Mr. Cedillo also agree that he listed the amounts owed to him by NY Electric on his Schedules and Statements.  And they agree that prior to the Petition Date, Mr. Cedillo was an officer of 656 Myrtle Avenue Realty Corp. ("656 Myrtle Avenue").

But Web Holdings and Mr. Cedillo disagree as to whether certain amounts that were owed to him were listed accurately in his bankruptcy filings.  And Web Holdings and Mr. Cedillo disagree as to whether he adequately disclosed his ownership interest in K&R Hardware on his Schedules and Statements.  They also disagree as to whether Mr. Cedillo was a shareholder of 656 Myrtle Avenue at the time that his bankruptcy petition was filed, and whether he was an owner, a shareholder, or held an equitable interest in K&R Plumbing Corp.

## *The Question of Intent*

As with its Section 727(a)(2)(A) claim, a key element of Web Holdings' Section 727(a)(4)(A) claim to deny Mr. Cedillo's discharge is his intent, that is, whether Mr. Cedillo "knowingly and fraudulently" made a false oath or account in connection with his Chapter 7

bankruptcy case.  And here as well, Web Holdings and Mr. Cedillo disagree as to whether he acted knowingly and with fraudulent intent.

The elements of a claim to deny a debtor's discharge under Bankruptcy Code Section 727(a)(4)(A) are that (1) Mr. Cedillo made statements under oath in connection with his bankruptcy case; (2) the statements were false; (3) Mr. Cedillo knew the statements were false; (4) Mr. Cedillo made the statements with fraudulent intent; and (5) the statements materially related to Mr. Cedillo's bankruptcy case.  *In re Murray*, 249 B.R. at 228.  The Court considers each of these elements in turn.

*Whether Web Holdings Has Established that Mr. Cedillo Made Statements Under Oath in Connection with His Bankruptcy Case*

The first element that Web Holdings must establish is that Mr. Cedillo made statements under oath in connection with his bankruptcy case.  That is, Web Holdings must show that there is no genuine dispute as to a material fact that Mr. Cedillo made statements under oath here.

Web Holdings alleges, and the record shows, that "[o]n May 8, 2013, [Mr. Cedillo] filed his Schedules of Assets and Liabilities and Statements of Financial Affairs with the Court . . . ."  Compl. ¶ 10.  Web Holdings also alleges that "[o]n September 10, 2014, [Mr. Cedillo] was examined by counsel to [Web Holdings] and counsel to Carver . . . pursuant to Bankruptcy Rule 2004."  Compl. ¶ 13.  And Web Holdings alleges that Mr. Cedillo testified at the Section 341 Meeting.

In response, Mr. Cedillo does not dispute that he made these filings in his bankruptcy case, and that he made them under the penalty of perjury.  He also does not dispute that he testified at the Rule 2004 Examination conducted by Web Holdings and Carver, and at the Section 341 Meeting.

Here, the record shows that on May 8, 2013, Mr. Cedillo filed his bankruptcy Schedules and Statements with the Court. The record also shows that he signed the May 8, 2013 filings under the penalty of perjury. And the record shows that Mr. Cedillo filed a Statement of Financial Affairs, and that too was signed under the penalty of perjury. In addition, the record shows that on August 6, 2013, Mr. Cedillo filed an Amended Schedule B and Amended Statement of Financial Affairs, and again, that he signed these documents under the penalty of perjury.

For these reasons, and based on the entire record, Web Holdings has established that there is no genuine dispute as to a material fact as to the first element of its Section 727(a)(4)(A) claim, that Mr. Cedillo made statements under oath in connection with his bankruptcy case.

*Whether Web Holdings Has Established that Mr. Cedillo's Statements Were False*

The second element that Web Holdings must establish is that Mr. Cedillo's statements made under oath were false. That is, Web Holdings must show that there is no genuine dispute as to a material fact that Mr. Cedillo made at least some false statements under oath in connection with his bankruptcy case.

Web Holdings argues that Mr. Cedillo made false statements in his Schedules and Statements. Specifically, Web Holdings argues that in response to Question 18 of his Amended Statement of Financial Affairs, Mr. Cedillo did not disclose that he was an officer, director, or shareholder of K&R Hardware within the last six years. Web Holdings also argues that Mr. Cedillo did not disclose his ownership interest in K&R Hardware in his Amended Statement of Financial Affairs. And Web Holdings argues that Mr. Cedillo did not disclose deposits into his bank account totaling $22,102.87 in response to Questions 1 and 2 of that statement.

And Web Holdings argues that Mr. Cedillo made false statements in his Schedule B. Specifically, Web Holdings argues that here as well, Mr. Cedillo did not disclose his ownership interest in K&R Hardware. Web Holdings also argues that "[d]espite having been adjudged by the State Supreme Court to be the '[owner]' [of] Kevin and Richard Plumbing & Heating Supplies Corp., [Mr. Cedillo] failed to disclose said ownership interest in his Schedule B." Pl's Mem. at 11. Web Holdings argues that "[d]espite the fact that no monies have been paid to him to date," Mr. Cedillo valued the amount owed to him by NY Electric under the $50,000 promissory note as $1.00. Pl's Mem. at 11. Additionally, Web Holdings argues that Mr. Cedillo did not disclose that the "payment under the $50,000.00 Note was secured by a security interest in the Hardware Store Assets under the Chattel Mortgage." Pl's Mem. at 11.

In addition, Web Holdings argues that Mr. Cedillo failed to identify or disclose information on his Schedules I and J. Specifically, Web Holdings argues that in addition to the amounts that he received on account of his regular employment, Mr. Cedillo "was regularly paid various amounts prior to the Petition Date in consideration of work and labor performed by [him] on 'side jobs' . . . however this additional income was not identified or disclosed in his Schedule J." Pl's Mem. at 12. In addition, Web Holdings argues that Mr. Cedillo "failed to disclose [Ms. Vasquez's] income and/or the amounts contributed by [Ms. Vasquez] to the payment of the shared household and family living expenses in his Schedules I and J." Pl's Mem. at 12.

Finally, Web Holdings argues that required disclosures are absent elsewhere in Mr. Cedillo's Schedules and Statements. Specifically, Web Holdings argues that Mr. Cedillo did not disclose that prior to the Petition Date, he "was an officer and shareholder of 656 Myrtle Avenue Realty Corp., . . . an entity which sold certain real property owned by it for $875,000.00 on or about February 27, 2014, after the Petition Date." Pl's Mem. at 11. Web Holdings also argues

that Mr. Cedillo did not disclose "his liability in connection with his guarantee of the SBA loan taken by K&R Hardware in his Schedules D, E and F." Pl's Mem. at 12.

Mr. Cedillo responds that any omissions were inadvertent, not deliberate. And he asserts that, taken as a whole, his bankruptcy Schedules and Statements give an accurate portrait of his financial situation. Mr. Cedillo "admits to inadvertently failing to list K&R Hardware in response to Question 18 of the Statement of Financial Affairs . . . ." Answer ¶ 21. But Mr. Cedillo argues that listing the transfer of the Hardware Store Assets to NY Electric, along with the note due from NY Electric as additional consideration for the assets in his Schedule B, was sufficient to disclose his ownership interest in K&R Hardware in his Schedules and Statements.

Mr. Cedillo also argues that he does not know whether the $22,102.87 in deposits identified by Web Holdings constitute income. He argues that when he completed his Statement of Financial Affairs in 2013, he did not have copies of his 2011 bank statements available for review. And Mr. Cedillo argues that "[w]hen [he] received the 500 pages of bank statements with this information in 2014, [he] did not see these deposits." Cedillo Decl.¶ 51(d). That is, Mr. Cedillo argues that he did not intentionally omit these deposits from his Amended Statement of Financial Affairs.

Mr. Cedillo further responds that while he did not list his interest in K&R Plumbing and the Plumbing Store on his Schedule B, he disclosed his interest in these entities in response to Question 18 of his Amended Statement of Financial Affairs. Mr. Cedillo acknowledges that he "inadvertently omitt[ed] the security interest from NY Electric when [he] listed the note on [his] Schedule B." Cedillo Decl.¶ 51(c). Mr. Cedillo also does not dispute that he valued the amounts due and owing from NY Electric to him at $1.00. But he explains that he did so because he understood that any payments on this note would be made to New York State, not to him.

Mr. Cedillo states that he "irregularly received small amounts of income for handyman jobs, and inadvertently failed to list the income." Def's Counterstmt. ¶ 84. That is, Mr. Cedillo does not dispute that "[t]he additional income received by [him] from 'side jobs' was not identified or disclosed in the Schedules and Statements."[3] Def's Counterstmt. ¶ 85. And he argues that "[i]n [his] budget for expenses, [he] listed [his] portion of the household expenses and included the contribution [he] paid to [his] wife towards rent, utilities, and food as a separate expenses described as 'Payment to Roommate for Rent, Utilities, Phone, and Food.'" Cedillo Decl.¶ 51(g).

Finally, Mr. Cedillo does not dispute that he did not disclose that he was formerly the nominal owner and an officer of 656 Myrtle Avenue. But he argues that the corporation belongs to his sister, not to him. Specifically, Mr. Cedillo argues that "[a]fter the failure of the nightclub, [his] sister no longer trusted [his] business judgment and did not authorize [him] to act on behalf of [the] corporation" and therefore, when completing his Schedules and Statements, he did not list an ownership interest in the corporation. Cedillo Decl.¶ 51(b). And Mr. Cedillo does not dispute that he did not disclose the SBA Debt as a liability in his Schedules and Statements. But he also notes that he "had trouble locating the information needed to list [this] loan." Cedillo Decl.¶ 51(e).

Here, the record shows that Mr. Cedillo made false statements in connection with his bankruptcy case. These include:

---

[3] In his Answer, Mr. Cedillo denies that he failed to disclose additional income received from "side jobs" on his Schedules and Statements. Answer ¶¶ 52-53. Mr. Cedillo later admits to failing to identify the additional income received from these "side jobs" on his Schedules and Statements. *See* Cedillo Decl.¶ 51(f) (Mr. Cedillo states that he "did not keep track of these [side] jobs and forgot to include [the income received] in [his] bankruptcy petition.").

- Mr. Cedillo did not disclose his interest in K&R Hardware in response to Question 18 of his Amended Statement of Financial Affairs and on his Schedule B as an asset of his estate.

- Mr. Cedillo did not disclose that in 2011, he received deposits into his bank account totaling $22,102.87 in response to Questions 1 and 2 of his Amended Statement of Financial Affairs.

- Mr. Cedillo did not list his interest in K&R Plumbing and the Plumbing Store on his Schedule B as an asset of his estate.

- Mr. Cedillo valued the note from NY Electric under the security agreement as $1.00, and did not list the security interest in the Hardware Store Assets in his Schedule B as an asset of his estate.

- Mr. Cedillo did not disclose additional income that he received from certain "side jobs" on his Schedule I.

- Mr. Cedillo did not disclose Ms. Vasquez's income and her contribution to their household expenses on his Schedules I and J.

- Mr. Cedillo did not disclose his interest in 656 Myrtle Avenue on his Schedules and Statements.

- Mr. Cedillo did not disclose his liability as a guarantor of the SBA Debt on his Schedules D, E, and F.

For these reasons, and based on the entire record, Web Holdings has established that there is no genuine dispute as to a material fact with respect to the second element of its Section 727(a)(4)(A) claim, that Mr. Cedillo made false statements under oath in connection with his bankruptcy case.

*Whether Web Holdings Has Established that Mr. Cedillo Knew that the Statements Were False*

The third element that Web Holdings must establish is that Mr. Cedillo knew that the statements that he made under oath in connection with his bankruptcy case were false. That is, Web Holdings must show that there is no genuine dispute as to a material fact that Mr. Cedillo knew that the statements in his bankruptcy Schedules and Statements were false at the time that they were made.

"'A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth.'" *U.S. Trustee v. Manno-DeGraw (In re Manno-DeGraw)*, 2016 WL 3708062, at *2 (Bankr. E.D.N.Y. July 6, 2016) (quoting *Montley Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)).  "Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement." *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 695 (E.D.N.Y. 2014) (quoting *In re Maletta*, 159 B.R. at 112)).  At the same time, "[a] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir. 1987).  "Once the objecting creditor meets its burden of proof and has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation." *Micro Connections, Inc. v. Shah (In re Shah)*, 388 B.R. 23, 37 (Bankr. E.D.N.Y. 2008).

Web Holdings argues that "each of the above-described statements or omissions . . . was made with [Mr. Cedillo's] knowledge of their falsity or with reckless disregard for the truth . . . ." Pl's Mem. at 12.

Mr. Cedillo responds that "the level of cooperation and disclosure of information provided by him, coupled with his ignorance and limitations, demonstrate that the inadvertent errors and omissions in the schedules do not rise to the level of either materiality or a false oath under the circumstances of this case." Def's Mem. at 17.  That is, Mr. Cedillo argues that he believed the disclosures in his Schedules and Statements were both accurate and adequate at the time they were made.

Mr. Cedillo also responds that he made "no attempt to hide [his] interest in the Hardware

Store or the transfer." Cedillo Decl.¶ 51(a). Specifically, Mr. Cedillo argues that listing the

transfer of the Hardware Store Assets to NY Electric in response to Question 10 of his Amended

Statement of Financial Affairs, together with listing the note due from NY Electric as additional

consideration in his Schedule B, was sufficient to disclose his ownership interest in K&R

Hardware. Def's Counterstmt. ¶¶ 76-77. In addition, Mr. Cedillo argues that "he provided Web

[Holdings], Carver, and the Chapter 7 Trustee with an appraisal of K&R Hardware's assets, and

fully disclosed his prior interest in K&R Hardware" in an effort to provide full disclosure. Def's

Counterstmt. ¶ 76. And Mr. Cedillo states that he "spent thousands of dollars" on appraisals,

including an appraisal of "the assets of NY Electric and [K&R Plumbing], again in an effort to

"provide full disclosure." Cedillo Decl. ¶¶ 51(a), 48.

In addition, Mr. Cedillo responds that he did not know whether the deposits constituted

income when he completed his Schedules and Statements. He argues that "[a]t the time [he]

completed [his] SOFA in 2013, [he] did not have copies of [his] 2011 bank statements available

to refresh [his] recollection, since they had been destroyed in Hurricane Sandy." Cedillo Decl.¶

51(d). And Mr. Cedillo notes that when he received and reviewed his 2011 bank statements in

2014, he did not see these deposits.

And Mr. Cedillo responds that he mistakenly listed the Plumbing Store in response to

Question 18 of his Amended Statement of Financial Affairs. And here too, Mr. Cedillo argues

that he "provided Web [Holdings], Carver, and the Chapter 7 Trustee with an appraisal of the

company's assets and all financial information requested and available to [him]." Def's

Counterstmt. ¶ 78. Mr. Cedillo also responds that he believed that the disclosure of the security

interest provided in his Schedule B "fully described" the security interest granted to him by NY

Electric in connection with the transfer of the Hardware Store Assets. Cedillo Decl.¶ 51(c). And he argues that "since the agreement with NY Electric was that any moneys paid by the corporation would be paid to NYS," he did not expect to receive any of the payments, and as such, valued the security interest as $1.00. Cedillo Decl.¶ 51(c). Mr. Cedillo argues that because he thought the description was sufficient, he "inadvertently omitted the security interest from NY Electric when [he] listed the note on [his] Schedule B." Cedillo Decl.¶ 51(c).

Further, Mr. Cedillo responds that because he did not keep track of his income from "side jobs," he did not disclose that additional income received on his Schedules and Statements. Cedillo Decl.¶ 51(f). And as to his Schedules I and J, Mr. Cedillo argues that "[o]n the Filing date, [his] wife and [he] were not yet married, but living together" and as a result, "[he] listed [his] portion of the household expenses and included the contribution [he] paid to [his] wife towards rent, utilities, and food as a separate expense described as "Payment to Roommate for Rent, Utilities, Phone, and Food." Cedillo Decl.¶ 51(g). In other words, Mr. Cedillo argues that far from attempting to conceal anything, "this is just the way [he] listed [the] information." Cedillo Decl.¶ 51(g).

And finally, Mr. Cedillo responds that since 2006, and at the time he completed his Schedules and Statements, he did not believe that he was an officer, shareholder, or had any interest in 656 Myrtle Avenue, and therefore did not list any information about the corporation on his Schedules and Statements. Specifically, Mr. Cedillo argues that 656 Myrtle Avenue belonged to his sister, and that after the nightclub's failure, his sister "no longer trusted [his] business judgment and did not authorize [him] to act on behalf of this corporation." Cedillo Decl.¶ 51(b). That is, when Mr. Cedillo completed his Schedules and Statements, he "did not consider [himself] an owner or officer [or shareholder] of this entity, and did not realize that [he]

could be considered an officer of this corporation." Cedillo Decl.¶ 51(b). Mr. Cedillo acknowledges that he is responsible for the SBA Debt, and that the omission of it from his Schedules and Statements was an inadvertent error. But he adds that he disclosed the SBA Debt at the Section 341 Meeting.

Here, the record shows, and Mr. Cedillo acknowledges, that he made false statements in connection with his bankruptcy case. But the record also shows that Mr. Cedillo provides several plausible alternative explanations with respect to those false statements.

First, as to some of these statements, Mr. Cedillo states, in substance, that at the time he made the false statements, he believed that other disclosures in his bankruptcy Schedules and Statements sufficiently disclosed his interests. Specifically, Mr. Cedillo believes that he accurately and adequately described his interest in K&R Hardware by disclosing the transfer of the Hardware Store Assets, describing the note, and providing his creditors with an appraisal of those assets. And he believed that he adequately described the security interest, and valued the note at only $1.00, because he expected repayment to be made directly to New York State.

Similarly, Mr. Cedillo states that by providing his creditors with an appraisal of the Plumbing Store, he believed that he sufficiently disclosed his interest in K&R Plumbing and the Plumbing Store. And he also believed that his description of Ms. Vasquez's contribution to their household adequately disclosed his financial situation, because he completed his Schedules I and J to reflect their financial arrangement when these documents were filed.

Second, as to others of the statements, Mr. Cedillo states, in substance, that any false statements made by him were inadvertent, not knowing, and simply the product of mistake. Specifically, at the time Mr. Cedillo completed his Schedules and Statements, he did not know whether the deposits in his account constituted income, and that upon further review of his 2011

bank statements, he did not see any deposits listed.  In addition, Mr. Cedillo states that did not

keep track of his income from "side jobs," and as a result, he was not able to disclose that

income on his Schedules and Statements.  And at the time he completed his Schedules and

Statements, Mr. Cedillo states that he believed that he was not an officer, shareholder, or had any

interest in 656 Myrtle Avenue.  Finally, Mr. Cedillo states that he mistakenly omitted the SBA

Debt from his Schedules and Statements, but disclosed that liability elsewhere.

For these reasons, Web Holdings has not established that there is no genuine dispute as to

a material fact as to the third element of its Section 724(a)(4)(A) claim, that Mr. Cedillo knew

that the statements that he made under oath in connection with his bankruptcy case were false.

### *Whether Web Holdings Has Established that Mr. Cedillo Made the Statements with Fraudulent Intent*

The fourth element that Web Holdings must establish is that Mr. Cedillo made the false

statements with fraudulent intent.  Web Holdings alleges that Mr. Cedillo fraudulently made

false oaths and accounts in connection with his bankruptcy case.  Specifically, Web Holdings

points to the false statements described above in Mr. Cedillo's Schedules and Statements, and

argues that these false statements point to the conclusion that Mr. Cedillo misrepresented or

omitted these matters for the purpose of perpetrating a fraud.

Mr. Cedillo responds, in substance, that Web Holdings has not come forward with

evidence sufficient to meet the standard necessary to establish fraudulent intent.  Just as he

denies that he acted knowingly, he argues that "to the best of [his] abilities, [he] believed the

petition and schedules [he] submitted were accurate and the omissions were not made with any

intent to hide information from [his] creditors or the Court."  Cedillo Decl.¶ 52.

As stated above, the barrier to establishing the absence of a genuine dispute of material

fact with respect to fraudulent intent is high.  "Fraudulent intent must be shown by actual, not

constructive fraud," and the plaintiff must demonstrate that "the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless." *In re Dubrowsky*, 244 B.R. at 571-72.

Here, as noted above, the record shows, and Mr. Cedillo acknowledges, that he made false statements in connection with his bankruptcy case.  As also described above, the record also shows that he provides plausible alternative explanations with respect to those false statements.  As to some, he states that his bankruptcy Schedules and Statements, taken as a whole, sufficiently disclosed his interests.  And as to others, he states that any false statements were inadvertent, not knowing, and were caused by mistakes, misunderstandings, or incomplete information, and not by an intent to defraud.

The record also shows that Web Holdings has not identified persuasive evidence of fraudulent intent by Mr. Cedillo.  While it has identified several errors in Mr. Cedillo's Schedules and Statements, Web Holdings has not demonstrated the kind of circumstances that signal a knowing and fraudulent plot or scheme to conceal information from creditors, or to use the bankruptcy process to commit a fraud.

For these reasons, Web Holdings has not established that there is no genuine dispute as to a material fact as to the fourth element of its Section 727(a)(4)(A) claim, that Mr. Cedillo made the false statements in connection with his bankruptcy case with fraudulent intent.

*Whether Web Holdings Has Established that the Statements Related Materially to Mr. Cedillo's Bankruptcy Case*

The fifth element that Web Holdings must establish is that the statements at issue related materially to Mr. Cedillo's bankruptcy case.  That is, Web Holdings must show that there is no genuine dispute as to a material fact that the false statements that Mr. Cedillo made under oath related materially to his bankruptcy case.

Web Holdings argues that "each of the above-described statements or omissions is materially related to [Mr. Cedillo's] bankruptcy case." Pl's Mem. at 12.

Mr. Cedillo responds that "the level of cooperation and disclosure of information provided by him, coupled with his ignorance and limitations, demonstrate that the inadvertent errors and omissions in the schedules do not rise to the level of . . . materiality . . .under the circumstances of this case." Def's Mem. at 17. Specifically, Mr. Cedillo argues that there is "clearly a material question of fact" with respect to whether he was a shareholder of 656 Myrtle Avenue at the time that his bankruptcy petition was filed. Def's Mem. at 16. That is, Mr. Cedillo argues that because he did not believe that he held an interest in that entity, its omission from his Schedules and Statements is not related materially to his bankruptcy case.

Here, as noted above, the record shows, and Mr. Cedillo acknowledges, that he made false statements in connection with his bankruptcy case. The record also shows that these false statements are material because they bear "a relationship to the debtor's business transactions or estate [and] . . . would lead to the discovery of [Mr. Cedillo's] assets, business dealings or existence or disposition of property." *In re Murray*, 249 B.R. at 288 (quoting *In re Sawyer*, 130 B.R. at 394). And while the parties disagree as to whether Mr. Cedillo was a shareholder of 656 Myrtle Avenue at the time that his bankruptcy petition was filed, the decision to omit the corporation from his Schedules and Statements and 'the determination of relevance and importance of the question is not for [him] to make.'" *In re Handel*, 266 B.R. at 590 (quoting *In re Diodati*, 9 B.R. at 808).

For these reasons, Web Holdings has established that there is no genuine dispute as to a material fact as to the fifth element of its Section 727(a)(4)(A) claim, that Mr. Cedillo made false statements that related materially to his bankruptcy case.

*            *            *

In sum, Web Holdings has shown that there is no genuine dispute as to a material fact as to the first element of its Third Claim for Relief, to deny Mr. Cedillo a discharge pursuant to Bankruptcy Code Section 727(a)(4)(A), that he made statements under oath in connection with his bankruptcy case, the second element of this claim, that several of these statements were false, and the fifth element of this claim, that these false statements related materially to his bankruptcy case. But Web Holdings has not shown that there is no genuine dispute as to the third and fourth elements of this claim, that Mr. Cedillo knew that these statements were false and that he made the false statements with fraudulent intent. For these reasons, and based on the entire record, Web Holdings' Motion for Summary Judgment on the Third Claim is denied.

## Conclusion

Web Holdings has shown that there is no genuine dispute as to a material fact as to the first, second, and fourth elements of its First Claim for Relief, to deny Mr. Cedillo a discharge pursuant to Bankruptcy Code Section 727(a)(2), that Mr. Cedillo transferred the Hardware Store Assets, that the transfer of the Hardware Store Assets was a transfer of an interest of Mr. Cedillo in property, and that the Hardware Store Assets were transferred within one year of the Petition Date. But Web Holdings has not shown that there is no genuine dispute as to the third element of this claim, that Mr. Cedillo transferred the Hardware Store Assets with intent to hinder, delay, or defraud his creditors. For these reasons, Web Holdings' Motion for Summary Judgment on the First Claim for Relief is denied.

Web Holdings has also shown that there is no genuine dispute as to a material fact as to the first, second, and fifth elements of its Third Claim for Relief, to deny Mr. Cedillo a discharge pursuant to Bankruptcy Code Section 727(a)(4), that Mr. Cedillo made statements under oath,

that several of these statements were false, and that these false statements related materially to his bankruptcy case.  But Web Holdings has not shown that there is no genuine dispute as to the third and fourth elements of this claim, that Mr. Cedillo knew that these statements were false and that he made the statements with fraudulent intent.  For these reasons, Web Holdings' Motion for Summary Judgment on the Third Claim is denied.

For the reasons stated herein, and based on the entire record, Web Holding's Motion for Partial Summary Judgment is denied.  An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**September 11, 2017**

Elizabeth S. Stong
**United States Bankruptcy Judge**